## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

El Camino, LLC,

     Plaintiff,

v.

City of South Saint Paul, Minnesota,

     Defendant.

Case No. _____

## COMPLAINT
## (JURY TRIAL DEMANDED)

1.    Plaintiff – a provider of housing for adults in recovery from drug and alcohol addiction– sues the City of South Saint Paul, claiming that the City engages in a pattern or practice of discrimination against them on the basis of disability in violation of the Fair Housing Act, Americans with Disabilities Act, the Civil Rights Act of 1871, and related state laws. Plaintiff alleges that the City unlawfully interferes with their operation and occupancy of dwellings for disabled persons in recovery and otherwise makes unavailable or denies housing because of disability

2.    Plaintiff is a sober home that provides people recovering from alcoholism and/or chemical dependence with a safe, sober, and supportive community environment in which to live. Plaintiff's residents are disabled under state and federal law. To accomplish this, Plaintiff purchased the house at 404 Orchard Lane (the "House") in the Defendant City of South Saint Paul, Minnesota

(the "City"), with the intent of operating the House as a sober home. And, in fact, Plaintiff has been and continues to operate the House as a sober home with ten residents.

3.     The City's Rental and Zoning Code prohibits homes in the neighborhood where the House is located from housing more than three unrelated people.

4.     Accordingly, on January 24, 2023, Plaintiff applied for a reasonable accommodation under the ADA to allow ten people to reside at the House.

5.     On March 20, 2023, the City denied Plaintiff's request after a public hearing during which residents commented based on their prejudices and perceived fears about persons recovering from drug and alcohol abuse. After receiving irrelevant and ignorant comments based on stereotypes and rumors, the City denied Plaintiff's request.

6.     On May 17, 2023, Plaintiff renewed its request, which the City denied in writing on June 23, 2023.

7.     At no time has the City engaged in the reasonable accommodation process in good faith, nor has the City articulated rational legal justification supporting its denials of Plaintiff's RA requests. Instead, the City cites inapplicable rental license and fire code provisions, the "fundamental character" of "R-1" neighborhoods, and the purported burden on the City were it to provide the

2

reasonable accommodation and simply treat Plaintiff as it would any family of ten residing in an R-1 neighborhood.   The City provided no documentary evidence to support its conclusions,  instead adopting the discriminatory animus and perceived fears of the residents in denying Plaintiff's requests.

8.      The City continues threatening Plaintiff with further adverse action to the detriment of the House's residents.

9.       For these reasons, Plaintiff seeks damages and injunctive relief for discrimination on the basis of disability and familial status, including failure to accommodate, intentional discrimination, and disparate impact discrimination. Additionally, Plaintiff seeks costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

10.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

11.     This Court has jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States—specifically, the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et seq. and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

12.     This Court has personal jurisdiction over Defendant because Defendant is located within the State of Minnesota, in the County of South Saint Paul.

13.     Venue is proper in this district under 28 U.S.C. § 1391 because the unlawful practices described herein occurred within this District.

## PARTIES

14.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

15.     Plaintiff El Camino, LLC ("Plaintiff") is a Minnesota limited liability company with its principal place of business in the City of South Saint Paul.

16.     Plaintiff provides affordable housing and support to individuals with disabilities, specifically those recovering from substance abuse and/or alcoholism.

17.     Arturo Eguia is the owner and operator of the House at 404 Orchard Lane in the City.

18.     Defendant City of South Saint Paul (the "City") is a political subdivision of the State of Minnesota, organized and existing in the County of Dakota, pursuant to Minnesota law.

19.     The City is responsible for the acts of its agents and employees, including the City Council.

20.     The City is also responsible for enacting, enforcing, and applying its Code of Ordinances, including its Rental and Zoning Codes.

## STATUTORY AND REGULATORY FRAMEWORK

21.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

22.     In 1988, Congress amended the FHA to extend the guarantee of fair housing to handicapped individuals. Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA.

23.     Under the FHA, a person is subject to a "handicap" if she or he has a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of having such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of controlled substance)." 24 C.F.R. § 100.201. The ADA uses similar terminology to define a "disability." *See, e.g., Tsombandis v. West Haven Fire Dept.,* 352 F.3d 565 (2d Cir. 2003).

24.     Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1).

25.     Discrimination" under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such

accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or the provision of services or facilities in connection with such dwelling, based on a handicap of such person residing in or intending to reside in that dwelling after it is sold, rented, or otherwise made available. 42 U.S.C. § 3604(f)(2).

26.     The federal regulations implementing the FHA specifically define as discriminatory activity and prohibit providing municipal services differently based on a handicap. 24 C.F.R. § 100.70(d)(4).

27.     The federal regulations implementing the FHA further make it unlawful "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development" because of a handicap. 24 U.S.C. § 100.70(a).

28.     Pursuant to 42 U.S.C. § 5304(b)(2), the City – as a recipient of federal community development funds – certifies to the Secretary of the United States Department of Housing and Urban Development that it "will affirmatively further fair housing."

29.     The ADA requires that no qualified individual with a disability shall,

by reasons of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity or be subjected to discrimination by any municipal entity. 42 U.S.C. § 12132.

30.     The federal regulations that implement the ADA prohibit a public entity from administering a licensing program or establishing certain requirements for activities of a licensee in a manner that subjects qualified disabled individuals to discrimination on the basis of their disability. 28 C.F.C. § 35.130(6).

31.     The federal regulations implementing the ADA also make it unlawful for a public entity, in determining a site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities, denying them the benefits of certain locations, or otherwise subjecting them to discrimination. 28 C.F.R. § 35.130(4)(I).

32.     Title II of the ADA makes it unlawful for a public entity to discriminate through its zoning laws against (1) a person with a "disability," 42 U.S.C. § 12132, or (2) a person who has a "relationship or association" with a person with a "disability," 28 C.F.R. § 35.130(g). The ADA gives "any person alleging discrimination" under the provision the right to sue.

33.     The City's policy or practice includes, but is not limited to, the commission of the following unlawful acts:

a.  Denying or otherwise making unavailable housing to disabled persons,

7

including those for whom plaintiffs provide or seek to provide housing, because of disability;

b. Discriminating in the terms, conditions, or privileges of sale or rental of housing by disabled persons, including those for whom plaintiffs provide or seek to provide housing, or in the provision of services or facilities in connection with housing, because of disability;

c. Making, printing or publishing, or causing to be made, printed or published a statement in connection with the sale or rental of housing that indicates a limitation, preference or discrimination on the basis of disability;

d. Restricting or attempting to restrict housing choice of disabled persons, including those for whom plaintiffs provide or seek to provide housing, because of disability;

e. Perpetuating or tending to perpetuate segregated housing patterns based on disability;

f. Discouraging the rental or purchase of housing because of disability;

g. Communicating to persons that they would not be comfortable or compatible with existing residents of a community because of disability;

h. Enforcing land use restrictions that preclude or restrict the sale or rental

of housing because of disability;

i.  Threatening, intimidating, and interfering with plaintiffs and disabled persons, including those for whom plaintiffs provide or seek to provide housing, in their enjoyment of a dwelling because of disability;

j.  Coercing plaintiffs to deny or limit dwellings to disabled persons because of disability;

k.  Assigning disabled persons, including those for whom plaintiffs provide or seek to provide housing, to certain neighborhoods because of disability;

l.  Providing different municipal services to disabled persons, including those for whom plaintiffs provide or seek to provide housing because of disability;

m. Evicting or threatening to evict disabled persons, including those for whom plaintiffs provide or seek to provide housing, because of disability;

n.  Failing to make reasonable accommodations in rules, policies, and practices that may be necessary to afford disabled persons, including those for whom plaintiffs provide or seek to provide housing, an equal opportunity to use and enjoy a dwelling;

o.  Failing to affirmatively further fair housing in the administration and

application of its zoning, building, and life safety codes;

p. Denying or limiting disabled persons, including those for whom plaintiffs provide or seek to provide housing, the opportunity to participate in or benefit from the supportive housing offered by group homes, including plaintiffs' dwellings;

q. Using land use ordinances and methods of administering those ordinances for the purposes or with the effect of subjecting disabled persons, including those for whom plaintiffs provide or seek to provide housing, to discrimination on the basis of disability;

r. Denying disabled persons, including those for whom plaintiffs provide or seek to provide housing, an opportunity to participate in a program in the most integrated setting appropriate to their needs;

s. Denying disabled persons, including those for whom plaintiffs provide or seek to provide housing, an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities;

t. Utilizing licensing and permit requirements to provide municipal services that are not equal as applied to disabled and nondisabled persons;

u. Utilizing unequal requirements for benefits or services to deny disabled

persons, including those for whom plaintiffs provide or seek to provide housing, enjoyment, and access to those benefits or services as enjoyed by others;

v.  Aiding, abetting, inciting, compelling, or coercing the doing of acts or practices in violation of federal and state fair housing laws;

w.  Discriminating through public land use practices, decisions, and authorizations because of disability, including the use of zoning laws that make housing opportunities unavailable;

x.  Retaliating against plaintiffs because of their exercise of their fair housing rights;

y.  Conspiring with others to violate the federal rights of disabled persons;

z.  Refusing or failing to prevent persons from violating the federal rights of disabled persons;

aa. Failing to affirmatively further fair housing

bb. Classifying housing for disabled persons for the purpose or with the effect of excluding them from certain neighborhoods;

cc. Infringing on the privacy rights of disabled persons; and,

dd. Depriving disabled persons of the safety and security of their homes from governmental intrusion.

34.  The City injured plaintiffs by committing each of these unlawful

housing practices and discriminatory acts.  Accordingly, each plaintiff is an aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3), 1986, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and related state laws.

35.     Disability" in the ADA (and therefore FEHA) and "handicap" in the FHA are defined as: (1) a "physical or mental impairment which substantially limits one or more of [a] person's major life activities," (2) "a record of having such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. §§ 3602(h), 12102(1).

36.     An organization has standing to sue under the ADA on its own behalf by establishing an "injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular conduct in question.  *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (brackets omitted) (quoting *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)).

37.     Thus, a plaintiff that "has presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities . . . has standing to bring . . . suit on its own behalf." *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002).

12

## STATEMENT OF FACTS

*Plaintiff, the House, and its Residents*

38.     On or around October 13, 2022, Plaintiff, through Mr. Eguia, purchased 404 Orchard Lane (the "House").

39.     Mr. Eguia promptly spoke with the City's attorney to explain his intent to use the House as a sober home.

40.     The City's attorney advised Mr. Eguia to apply for a rental license, which Mr. Eguia did and which the City granted.

41.     Plaintiff began accepting disabled residents into the House from treatment centers.  As a requirement to be admitted to El Camino's sober living housing, residents must affirm that they are in recovery from drugs and alcohol and remain sober at all times during their stay.

42.     There are currently nine such residents, plus a house manager in the House.

43.     The nine individuals referenced above who reside in the House are individuals with a handicap or disability by virtue of their alcohol or chemical dependency combined with their completion of a substance abuse treatment program. The nine individuals have a demonstrated inability to reside in the community without the support provided by a sober living environment.

44.     At the House, Plaintiff provides a peer-driven sober living environment

13

designed to increase self-responsibility and support for persons in recovery. The House provides a supportive atmosphere designed to increase self-responsibility and support for residents in recovery from alcoholism and substance abuse. Plaintiff does not provide a "recovery program" or services. No counseling or therapy is offered to the residents; however, they must commit to sobriety and remain free from using drugs or alcohol.

45.     The residents of the House must willingly choose to participate in the program and reside at the House. Residents of the House live together as a family and make group decisions based on democratic procedures. The House is used as a single-family home with similar support and collaborative functions. The residents of the House relate to each other as the functional equivalent of a single family.

46.     All the residents of the House have access to the entire house, including all of the household facilities, and function together as a single housekeeping unit. There are no special locks on the doors of the bedrooms or other rooms in the House. The residents share all household responsibilities and live together to create a "family" atmosphere where all residents share all aspects of domestic life.

47.     Neither Plaintiff nor the House is a substance abuse treatment center, halfway house, shelter, or residential facility. No treatment, counseling, therapy, or health care services are provided at the House or by Plaintiff. Plaintiff is not licensed by the State of Minnesota and is not required to be licensed. No institutional

personnel are involved in the House's supervision or management.

*City Code*

48.     The City's Code of Ordinances (the "Code") divides the City into zones. § 118-95.

49.     Under the Code, an R-1 district is a single-family district. § 118-95.

50.     The Code limits the principal use of houses within an R-1 district to the following: One single-family dwelling (not to include mobile homes); Churches, chapels, temples, and synagogues, including Sunday schools, and parish houses meeting the requirements of this district; Public parks and playgrounds; A state-licensed residential care facility serving six or fewer persons; Child day care facility serving 12 or fewer persons; Adult day care facility serving 12 or fewer persons. § 118-121

51.     Further, the Code prohibits any person from operating a boardinghouse in any zoning district within the city, "which means that no more than three unrelated persons may reside in one rental dwelling unit." § 106-232

52.     The Code defines "boardinghouse" as "a building other than a motel or hotel where, for compensation and by prearrangement for definite periods, meals or lodging are provided for more than three unrelated persons." § 106-231; *see also* § 118-8.

53.     And the Code, within the chapter on "Residential Rental Housing,"

defines "family" as "those persons legally related to each other in linear relationship such as spouses, grandparents, parents, children, grandchildren, and siblings." § 106-231.

*City Citations and Denial of Reasonable Accommodation Requests*

54.     On or around January 20, 2023, at the City's request, Plaintiff supplied the City of South St. Paul with a list of residents at the House. The list included eight residents.

55.     On or around January 23, 2023, the City served Plaintiff with a citation for renting to more than three unrelated adults.

56.     On or around January 24, 2023, Plaintiff, through Mr. Eguia, applied for a reasonable accommodation to house ten residents at the House.

57.     The City held a public hearing on the application for a reasonable accommodation on March 6, 2023.

58.     At the hearing, the City's attorney conceded that the issue was not one of licensing, conceded that it was "entirely appropriate" for Mr. Eguia to bring the application for a reasonable accommodation, conceded that Plaintiff's burden was "not a high one," conceded that Plaintiff "naturally has a financial interest" in the House, and conceded that the residents of the House were disabled for the purpose of analyzing whether to grant the accommodation when displaying a slide that stated: "Whether there is a qualifying disability: Yes. Individuals in recovery from alcohol

or substance abuse have a qualifying disability."

59.     Mr. Eguia spoke at the hearing on behalf of Plaintiff and explained that he picked the location of the House to provide a nice environment and safe place for the residents. He explained that he picked a place that would feel like home based on what was for sale, affordable, and new enough not to require the upkeep of a house built in the 1800s.

60.     Mr. Eguia further explained that more than three residents were necessary to fulfill the mission and effectiveness of a sober house and that, even with five to six residents, he would not be able to pay the mortgage, further explaining that the treatment centers pay a fee for the residents they refer to the home.

61.     Public comments in writing and at the hearing was overwhelmingly negative, save for the few residents of the House who spoke about the tremendous benefit of living in the House and the need for accountability and structure that the House provides.

62.     A City resident opposed to the house called such testimony "sob stories," stating "there are plenty of areas where that can go on."

63.     Other negative comments included but are not limited to:

- "Increased activity in the neighborhood unbecoming of an R1 neighborhood"

- "all of a sudden my neighborhood is turned into a neighborhood with a boarding house"

17

- "I don't have a lot of legal reasons…. It comes down to that's not the neighborhood for it."

- "My daughters, my grandkids are arriving, coming home late at night, when other neighbors' daughters are coming home late at night, young adults, I don't know how comfortable they feel. My wife didn't feel comfortable pulling in our driveway because of guys standing out in the street."

- "People need to come home, feel safe, feel that they are around single family homes in their neighborhood."

- References to "the lives we bought into" and "let people buy into what they want"

- "What if I sell my house to a family that has some young children…. Quite frankly, I wouldn't buy the house if it was me."

64.    The City adopted the Public's discriminatory comments and perceived negative effects of living near a group home for disabled persons.

65.    The March 6, 2023, meeting adjourned without a decision and, following receipt of additional information, at the March 20, 2023, meeting, the City Council denied the request for a reasonable accommodation following the City staff's recommendation:

> Staff recommends denying the requested accommodation because 10 residents would fundamentally alter the nature of this single-family neighborhood and because the Applicant has not provided evidence to show that 10 are necessary. Further, Staff recommends denying any requested accommodation unless/until the Property is fitted/inspected/approved with the sprinkler system required by the MSFC. Without the required sprinkler, the proposed use is unlawful under laws the City has no jurisdiction to modify. The City is subject to the MSFC and does not have the authority to grant a deviation from

18

it. If the Applicant wanted to seek an accommodation from the fire code, that request would have to be presented to the appropriate agency. Staff recommends the Council assume considering the residents as claimed/described by the Applicant to be disabled. However, because the Applicant has not provided credible information to support his claims about resident sourcing/selection, the Council may deny the request unless/until the Applicant presents credible information and screening criteria that establish all the residents are in fact individuals with disabilities. Alternatively, with an approved sprinkler system, proper resident screening, and appropriate conditions for MASH certification, current resident lists/contact information, and inspections, Staff would recommend an accommodation allowing 6 or 7 residents as a reasonable alternative to meet a disability-related need.

66.    On April 10, 2023, the City served Plaintiff with a citation for renting to more than three unrelated adults.

67.    On April 25, 2023, Plaintiff was mailed a warning letter regarding the Property's use designation change to a "congregate residence" per the State Building Code and State Fire Code.

68.    On May 4, 2023, Plaintiff was served with a citation for renting to more than three unrelated adults.

69.    On or around May 15, 2023, the City revoked Plaintiff's rental license.

70.    On or around May 17, 2023, Plaintiff submitted a second request for a reasonable accommodation, which came before the City Council for a public hearing on June 5, 2023.

71.    Again, the City Council denied Plaintiff's request, concluding:

 (1) Final Decision Already Made. The Council considered and denied the same request in April 2023, and that decision was not appealed.

19

(2) No Rental License. The Applicant's rental license has been revoked, rendering him ineligible to engage in any rental activity at the property, including the operation of a sober home in the City.

(3) Violation of Fire Code. The MSFC requires automatic sprinkler systems in sober homes. The City does not have the authority to approve a deviation from the MSFC.

(4) Violation of the International Building Code ("IBC"). The Property's change in use classification from a single-family home to congregate living requires a code compliance review by a licensed professional and a new certificate of occupancy. The Applicant did not respond to the Building Official's request for the code compliance review.

(5) Fundamental Alteration to the City's Zoning Code. The request to allow 10 unrelated adults in a single-family home in the R-1 zoning district is not reasonable because it would fundamentally alter the character of the R-1 neighborhood. The intensity and density of the use and its impact on parking and traffic are inconsistent with uses in this R-1 neighborhood.

(6) Fundamental Alteration to the City's Rental Code. The request to allow 10 unrelated adults in a single-family home in the R-1 zoning district is not reasonable because it would fundamentally alter the City's rental regulations which limit unrelated adults to 3 and prohibit boarding houses within the City. The Code regulates these uses because of, among other things, the intense demands they place on on-street parking in a City with narrow roads, and in R-1 districts, minimally available on-street parking.

(7) Lack of Relationship Between the Requested Accommodation and the Disabilities of the Residents. The Applicant stated he has no screening process for the residents at the Property and has not credibly identified the source of resident referrals. Without some controlling criteria, the Applicant has not shown that a relationship exists between the request of 10 people and the residents' disabilities.

(8) Lack of Necessity. The record does not show that 10 residents are necessary for a sober home. There is no disability-related need to exempt the Applicant from the rental license requirement.

(9) Administrative Burden. In roughly 8 months, the South St. Paul Police Department has responded to twenty calls for service to the Property. The Applicant has numerous violations of City Code in relation to his failure to screen residents which has resulted in repeatedly allowing predatory offenders to reside at the Property, allowing individuals with outstanding warrants to reside at the property, a drug overdose and wrongfully evicting a resident from the property. This ongoing failure by the Applicant to manage the Property has resulted in a substantial administrative burden to the City. Applicant has given no indication that he would abide by the City's laws for landlords.

72.     These are not sound or legal grounds for denying Plaintiff's request.

73.     First, there is no bar on an applicant making multiple requests for an accommodation.

74.     Second, as to a rental license, the fire code and IBC are irrelevant. The entire point of requesting an accommodation is for Plaintiff to be treated like any other single-family home. That is, single-family homes do not have a rental license requirement. The fire code provision at issue—sprinklers—is inapplicable to single-family homes, as are the IBC provisions. Plaintiff is not a congregate living center. Nor is Plaintiff a traditional landlord renting property.

75.     Third, "fundamentally alter the character of the R-1 neighborhood" is simply another way of stating that they do not want people with disabilities living in the neighborhood. The public comments summarized above indicate as much.

21

76.     Fourth, all residents of the House come from treatment centers. Thus, the screening concern of the City is unfounded. Moreover, this requirement does not apply to any other single-family residences regardless of the number of family members residing in the home and whether or not they are sober, addicted to drugs or alcohol, or in recovery. The current residents also submitted affidavits regarding their disability and its substantial effect on their daily life and ability to live outside of a sober home. Regardless, the presence or absence of any specific screening procedures is irrelevant to an analysis of whether an accommodation is reasonable and necessary.

77.     Fifth, there is a need. As Plaintiff explained on multiple occasions to the City, the sober home with fewer than ten residents is not financially sustainable. Plaintiff also submitted evidence to the City that sober homes with larger numbers of residents show better outcomes. Plaintiff's evidence demonstrated that granting an accommodation would provide concrete benefits that would ameliorate the effects of the residents' disability by 1) providing them with a sober residence and 2) creating an environment most conducive to recovery. There is no alternative method to achieve those benefits in this specific home other than granting accommodation from the City's limit on unrelated individuals residing in single-family districts.

78.     Finally, the burdens cited by the City are irrelevant to the decision to grant or deny Plaintiff's reasonable accommodation request and appear motivated

by animus against Plaintiff and the home's residents. The City cited burdens related to past residents of the home and interactions with police, which are no different from the expected burdens from any residential property. The City did not claim that there would be any additional burdens specifically related to the accommodation request.

*The City's Actions Have Injured Plaintiff and the People Plaintiff Serves*

79.    The people who reside in the House are people with disabilities because they suffer from alcoholism and/or chemical dependence.

80.    The people who reside in the House would be injured if the City shut down the House or forced them to move from the House. The residents have testified that they cannot live independently and would likely be homeless if they did not live in the sober home.

81.    Plaintiff seeks to protect the interest of the people who reside in the House; indeed, those interests are germane to Plaintiff's purpose of assisting addicts and alcoholics in their recovery.

82.    Plaintiff, too, has been injured by the City's actions. Plaintiff's mission has been frustrated, and it has been forced to divert already-scare resources because of the City's discriminatory acts. Plaintiff has met with City officials on multiple occasions, attended multiple City Council meetings, and submitted two applications for reasonable accommodation. Plaintiff has requested the assistance of several

attorneys and spent hours reviewing and responding to the City's unlawful and unreasonable requests. Because of the City's acts and practices, plaintiffs, and each of them, have suffered a violation of their federal statutory and constitutional rights, loss of the value, use, and enjoyment of their property, loss of current and future income, and frustration of their mission and diversion of their limited resources, among other injuries. The disabled persons housed by plaintiffs have suffered a violation of their federal civil rights and rights to privacy, which has injured plaintiffs. Accordingly, each plaintiff is entitled to compensatory damages.

83.     There now exists an actual controversy between the parties regarding the City's duties under federal civil rights laws. Accordingly, Plaintiff is entitled to declaratory relief under their federal law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, 42 U.S.C. § 12133, as well as Rule 57 of the Federal Rules of Civil Procedure.

84.     Unless enjoined, the City will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from the City's acts and the pattern or practice of discrimination unless this Court provides relief. Accordingly, each plaintiff is entitled to injunctive relief under their federal law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, and 42 U.S.C. § 12133, as well as Rule 65 of the

Federal Rules of Civil Procedure.

85.    By reason of the City's unlawful acts and practices, plaintiffs, and each of them, have suffered violation of their federal statutory and constitutional rights, loss of the value, use and enjoyment of their property, loss of current and future income, and frustration of their mission and diversion of their limited resources, among other injuries. The disabled persons housed by plaintiffs have suffered a violation of their federal and state civil rights and rights to privacy, which has injured plaintiffs. Accordingly, each plaintiff is entitled to compensatory damages.

86.    There now exists an actual controversy between the parties regarding the City's duties under federal and state civil rights laws. Accordingly, each plaintiff is entitled to declaratory relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, 42 U.S.C. § 12133, and the Minnesota Constitution, as well as Rule 57 of the Federal Rules of Civil Procedure.

87.    Unless enjoined, the City will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from the City's acts and the pattern or practice of discrimination unless relief is provided by this Court. Accordingly, each plaintiff is entitled to

injunctive relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, and 42 U.S.C. § 12133, California Government Code § 12989.2, and the Minnesota Constitution, as well as Rule 65 of the Federal Rules of Civil Procedure.

## CLAIMS FOR RELIEF

### FIRST CLAIM

### (Discrimination Under the Fair Housing Act)

88.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

89.    The City is violating Plaintiff's rights under the FHA, 42 U.S.C. §§ 3601 et seq. and its implementing regulations.

90.    Specifically, the City is violating the FHA by denying and otherwise making housing unavailable to people with disabilities who live or want to live in the Home because of their disability, using the Code as pretext to exclude people from the Home because of their disabilities, enforcing discriminatory zoning rules and policies on Plaintiff, interfering with people with disabilities rights to live where they choose; failing to make reasonable accommodations in the City Code to afford people with disabilities an equal opportunity to use and enjoy the Home.

91.    In the housing context, a "reasonable accommodation" is one that is "necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

92.    As a result of the City's actions, Plaintiff and people with disabilities who live or want to live in the Home have been injured.

93.    Specifically, Plaintiff has suffered monetary damages because of the time spent responding to multiple requests from the City, researching and responding to the City's pretextual reasons for denying Plaintiff's request, and reassuring residents that Plaintiff would continue to provide a sober residence.

94.    People with disabilities who live or want to live in the Home live in fear of having no place to live or losing their home and are suffering from anxiety, emotional distress, setbacks in their efforts at recovery, and other irreparable harm as a result of the City's actions.

95.    Defendant City of South St. Paul  injured plaintiffs by committing discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*

96.    As a result of Defendant's conduct, Plaintiff is also entitled to its attorney's fees and costs.

## SECOND CLAIM
### (Discrimination Under the Americans with Disabilities Act)

97.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

98.     Plaintiff provides housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

99.     The City is a public entity, falling under 42 U.S.C. § 12131(1).

100.    The City's actions to exclude current and future residents of the House from single-family residential zones violate Plaintiff's rights under the ADA, 42 U.S.C. §§ 12131 et seq., and the regulations promulgated thereunder.

101.    Specifically, the City violates Plaintiff's ADA rights by denying people with disabilities the opportunity to participate in or benefit from the supportive housing program Plaintiff offers, denying people with disabilities the opportunity to participate in a program in the most integrated setting appropriate to their needs in a discriminatory manner and different from the opportunities presented to people without disabilities; and enforcing the Code to deny people with disabilities the enjoyment of rights, privileges, advantages, and opportunities enjoyed by people without disabilities.

102.    As a result of Defendant's conduct, Plaintiff has suffered monetary damages, and people with disabilities who live or want to live in the Home have also been injured.

103.    Specifically, Plaintiff has suffered monetary damages because of the time spent responding to multiple requests from the City, researching and responding to the City's pretextual reasons for denying Plaintiff's request, and reassuring

28

residents that Plaintiff would continue to provide a sober residence.

104.   As to the people who live or want to live in the Home, they live in fear of losing or not having a place to live and suffer anxiety, emotional distress, pain, setbacks in their efforts at recovery, and other irreparable harm because of the City's actions.

105.   As a result of Defendant's violation, Plaintiff is also entitled to its attorneys' fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests relief as follows:

1.      Enter a declaratory judgment that the City has illegally discriminated against Plaintiff in violation of the FHA and ADA;

2.      Enter a declaratory judgment stating that Plaintiff's use of the House as a "sober house" is consistent with the classification of the premises as a single-family dwelling;

3.      Provide injunctive relief restraining the City from discriminating against Plaintiff and interfering with Plaintiff's current operation of the House as a home for people recovering from the disability of alcoholism and substance abuse and interfering with the residents' rights to reside in the House;

4.      Award compensatory damages;

5.      Grant an award of reasonable costs and attorney's fees; and

6.      Order such other and further relief as the Court deems just and proper.


Plaintiff demands trial by jury.

                                        *      *      *

Dated:          September 22, 2023          THE HOFFNER FIRM LTD.
                                            Fabian S. Hoffner, MN Bar No. 0202514
                                            Samuel Merritt, MN Bar No. 0398082
                                            310 4th Ave. S., STE 5010
                                            Minneapolis, MN 55415
                                            Telephone (612) 206-3777
                                                    fabian@fabianhoffner.com
                                                    merritt@fabianhoffner.com
                                            ATTORNEYS FOR PLAINTIFF