UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| EL CAMINO, LLC, | Case No. 23-cv-3011 (LMP/DLM) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF SOUTH SAINT PAUL, MINNESOTA, | |
| Defendant. | |

---

Fabian S. Hoffner and Samuel J. Merritt, **The Hoffner Firm, Ltd., Minneapolis, MN**, for Plaintiff.

Jessica E. Schwie and Joshua P. Devaney, **Kennedy & Graven, Chartered, Minneapolis, MN**, for Defendant.

Plaintiff El Camino, LLC ("El Camino"), purchased a property in South Saint Paul with the intention of operating it as a group "sober home" for up to ten individuals struggling with alcohol and drug addiction. Because the property is located in a single-family residential zone, El Camino was required to seek an accommodation from Defendant City of South Saint Paul, Minnesota (the "City"), to house more than three unrelated individuals. Citing several concerns about El Camino's compliance with City ordinances and Minnesota state regulations, the City twice denied El Camino's request. El Camino then brought this lawsuit, alleging the City discriminated against El Camino on the basis of disability in violation of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). The City now moves for summary judgment. For the reasons discussed below, the City's motion is granted.

## FACTUAL BACKGROUND

On October 13, 2022, El Camino purchased a property at 404 Orchard Lane in South Saint Paul, Minnesota (the "Property") for $436,000. ECF No. 23-1 at 24–31.[1] The Property is a two-story, 3,093-square-foot house with five bedrooms and two-and-a-half bathrooms. *Id.* at 273. Orchard Lane is a residential street with ten houses that ends in a cul-de-sac. *Id.* at 109.

Around the time El Camino purchased the Property, El Camino's sole owner, Arturo Eguia, corresponded with the City Attorney to discuss El Camino's intent to operate the Property as a group sober home and indicated that El Camino soon would begin accepting residents. *Id.* at 44–48. Under the City's Code of Ordinances ("City Code"), however, "no more than three unrelated persons may reside in one rental dwelling unit." S. Saint Paul, Minn., Code § 106-232(a)(2).[2] The City Attorney informed Eguia that he would need to request and receive an accommodation from the City Council authorizing a variance from City Code if El Camino intended to house more than three unrelated individuals at the Property. *See* ECF No. 23-1 at 44–45. Eguia expressed his understanding of the City Code's requirements and confirmed that "no more than" three individuals would reside at

---

[1] The factual background in this case is derived largely from the Land Use Record associated with the Property. *See generally* ECF No. 23-1; *see also One Love Hous., LLC v. City of Anoka*, 93 F.4th 424, 431 (8th Cir. 2024) (citation omitted) (holding that federal courts hearing reasonable-accommodation challenges "should limit their review to the materials that were presented to the local land use board").

[2] The City's Code of Ordinances can be found at: https://library.municode.com/mn/south_st._paul/codes/code_of_ordinances [https://perma.cc/B7JX-YL6Z].

2

the Property.  *Id.* at 44.  El Camino subsequently applied for and received a rental license for the Property.  *Id.* at 32–43.

El Camino began violating the terms of its rental license and other provisions of City Code and Minnesota law within just a few weeks.  By December 8, 2022—less than two months after El Camino purchased the Property—City police had been called to the Property on four occasions: (1) upon learning that a registered predatory offender was residing at the Property in violation of City Code, *id.* at 49, 66; (2) to apprehend a resident with an active warrant who resided at the Property in violation of City Code, *id.* at 52–53, 66; (3) to assist when a resident overdosed on illicit drugs, constituting a violation of City Code, *id.* at 54–56, 66; and (4) to respond to El Camino's alleged unlawful eviction of a resident in violation of Minnesota state law, *id.* at 57–58, 66.  El Camino does not dispute that it committed these violations.  ECF No. 35 at 2.

On January 10, 2023, the City Clerk sent El Camino a compliance letter outlining the violations above.  ECF No. 23-1 at 66–67.  The compliance letter also raised concerns that El Camino was housing more than three unrelated individuals at the Property.  *Id.*  Pursuant to City Code, the City Clerk demanded that El Camino provide a current tenant register, a tenant screening certification, and executed Minnesota Crime-Free Lease Addenda[3] for any residents residing at the Property.  *Id.* at 67.

---

[3]  Minnesota Crime-Free Lease Addenda relate to a Minnesota law under which landlords and tenants covenant that neither will conduct or permit unlawful activity on the premises of a rental property, including use or possession of controlled substances, prostitution, unlawful use or possession of firearms, or possession of stolen property.  *See* Minn. Stat. § 504B.171, subd. 1(a)(1).

Eguia responded to the compliance letter on January 20, 2023, stating that El Camino did not screen residents at the Property. *Id.* at 68. Eguia did, however, provide a list of tenants at the Property which revealed that, as of that date, eight individuals resided at the Property. *Id.* at 80; *see also* ECF No. 1 ¶ 54. The City issued an administrative citation to El Camino on January 23, 2023, for a violation of the City Code's prohibition on having more than three unrelated persons residing at the Property. ECF No. 23-1 at 71–73.

On January 24, 2024—one day after the City issued the administrative citation—Eguia, on behalf of El Camino, applied for an accommodation to house up to ten unrelated adults at the Property (the "First Application"). *Id.* at 74–75. The First Application stated that the accommodation was to create "[h]ousing for vulnerable adults with mental disabilities going through drug rehab because they can't fend for themselves." *Id.* at 74. A few days later, the City Clerk received an unsolicited call from the president of the Minnesota Association of Sober Homes ("MASH") who reported that MASH was revoking Eguia's membership. *Id.* at 80. MASH's president shared concerns that in a recent MASH meeting, Eguia indicated that there were sixteen people living at the Property and that he wanted to have twenty-two. *Id.* MASH's president also contacted one of the recovery facilities from which Eguia claimed to accept residents at the Property, but the facility said it "was not affiliated in any way" with the Property, Eguia, or El Camino. *Id.*

The City Clerk responded to the First Application by requesting additional information from El Camino and explaining that the request would be discussed at a public hearing before the City Council on March 6, 2023. *Id.* at 76–77. El Camino did not provide

4

the additional information the City Clerk requested. *See* ECF No. 26 at 4; ECF No. 23-1 at 80–83. The City Council also solicited comments from the public, which overwhelmingly urged the City Council to deny the request. *See* ECF No. 23-1 at 95–107. Based on the information collected ahead of the hearing, City staff were inclined to recommend denying the First Application but ultimately recommended "reserv[ing] judgment" until the City Council "receive[d] all the information provided at the public hearing." *Id.* at 83.

At the City Council hearing, the City Council heard testimony from the City Attorney, Eguia and other El Camino representatives, residents at the Property, and members of the community surrounding the Property. *See id.* at 109–40. Among other information provided at the hearing, Eguia specifically identified NuWay Alliance ("NuWay") and Evergreen Recovery ("Evergreen") as organizations that worked with him to place residents at the Property. *See id.* at 129. The City Council deferred a decision on the First Application until its next meeting on March 20, 2023, so City staff could assess the new information presented by El Camino. *See id.* at 138–40.

Before the next meeting occurred, a Deputy State Fire Marshal informed the City that El Camino's requested use of the Property placed it in an occupancy category that required automatic fire sprinklers to be installed. *Id.* at 159–64. City staff also researched Eguia's and El Camino's purported connections to NuWay and Evergreen. *Id.* at 167. Both organizations denied any affiliation with Eguia or El Camino despite Eguia's representations to the City Council. *Id.* at 167. Based on all the information gathered to that point, City staff recommended that the City Council deny the First Application. *Id.*

5

at 170. Among the reasons City staff provided for their recommendation were that: (1) El Camino had continuously violated City Code since purchasing the Property; (2) the Property was not in compliance with the Minnesota State Fire Code ("MSFC"); (3) Eguia had not been forthcoming about his and El Camino's affiliations with MASH, NuWay, and Evergreen; (4) El Camino had not provided any support for the claim that ten residents, as opposed to fewer, was necessary for the Property to function as an effective and sustainable sober home; and (5) El Camino did not screen residents and consequently could not "establish that the requested accommodation [was] for exclusively individuals with disabilities." *See id.* at 166–70.

The City Council resumed its hearing on March 20, 2023, to consider the new information gathered by City staff and to hear additional testimony from Eguia and El Camino's counsel. *See id.* at 184–93. After testimony was received, the City Council voted unanimously to deny the First Application and later adopted a resolution to that effect. *Id.* at 193, 205–08. The resolution cites several factual findings upon which the City Council based its decision, including that El Camino had not offered credible evidence that ten residents was necessary and that the Property was noncompliant with MSFC regulations. *Id.* at 206.

El Camino nevertheless continued operating the Property as a group sober home with more than three unrelated residents. On April 10, 2023, the City issued another citation to El Camino for violating City Code and demanded that El Camino reduce the number of residents to three within approximately two weeks. *Id.* at 209–11. On April 17, 2023, City police were notified that a resident at the Property had an outstanding warrant

6

for possession of child pornography, for which the City issued El Camino another citation for violating City Code. *Id.* at 212–22. El Camino does not dispute that it committed these violations. ECF No. 35 at 2.

Counsel for El Camino informed the City on May 3, 2023, that there were ten adults residing at the Property. *Id.* at 270, 339–40. The City notified El Camino that the City Council would hold a hearing on May 15, 2023, to consider revoking El Camino's rental license and denying its pending license renewal application given El Camino's continued violations of City Code. *Id.* at 227–28. No representative for El Camino was present at that hearing. *Id.* at 350–51. City staff recommended that El Camino's rental license be revoked because of: (1) El Camino's "repeated, ongoing violations of the City Code"; (2) El Camino's failure to properly screen residents; and (3) El Camino's failure to ensure the Property was compliant with the MSFC and other building code requirements. *Id.* at 271, 348–50. Based on that recommendation, the City Council voted unanimously to revoke El Camino's rental license for the Property and to deny the pending license renewal application. *Id.* at 352.

Also on May 3, 2025—the day the City notified El Camino of the license-revocation hearing—El Camino submitted a second accommodation request (the "Second Application"). *See id.* at 229–67. While largely duplicative of the First Application, the Second Application provided supplemental information and documentation, including a tenant screening form, *id.* at 245, and a study discussing the positive benefits of increased

7

occupancy in sober homes,[4] *id.* at 25–60. The Second Application also asserted that El Camino needed to have ten residents so that maintaining operations at the Property would be financially sustainable. *Id.* at 231.

The City Council held a hearing to consider the Second Application on June 5, 2024. *See id.* at 520–31. City staff recommended denying the Second Application for largely the same reasons as the First Application, noting that the First and Second Applications were the same "[i]n all material respects," except that El Camino's rental license for the Property had been revoked in the interim. *Id.* at 370. City staff added that "[t]he requested accommodation—for [El Camino]—would perpetuate an undue administrative burden on the City," noting that City police had responded to twenty calls to the Property in the nine months since El Camino purchased it and that Eguia, personally, had "demonstrated unwillingness to be candid or to consider himself subject to local laws." *Id.* at 369–70.

The City Council voted unanimously to deny the Second Application and passed a resolution to that effect on June 20, 2023. *Id.* at 531, 596–600. The City Council based its decision on several factors, including that: (1) the Second Application was substantively

---

[4] The study specifically analyzed the effectiveness of "larger" sober homes, defined as "8 or more residents," that are managed by Oxford House, ECF No. 23-1 at 252. The study found that having "more residents in a House is beneficial to residents' recovery from alcohol and drug abuse." *Id.* at 256. However, the authors noted that their "findings might not apply to other group homes or residential facilities, which can vary greatly in focus, procedures, setting, and size," and that "[i]t is actually possible . . . that somewhat smaller settings are more effective." *Id.* at 257. In other words, while the study concludes that having eight or more residents is more effective for Oxford House, it does not purport to conclude that having eight or more residents is *necessary* and expressly contemplates that having fewer than eight residents may be more effective in different circumstances. *Id.* at 256–57.

the same as the First Application, which had already been denied and which El Camino did not appeal; (2) El Camino's rental license for the Property had been revoked, making El Camino unauthorized to engage in rental activity; (3) the Property was not compliant with the MSFC and El Camino had taken no steps to ensure compliance with state fire code; (4) the requested accommodation would fundamentally alter the City's zoning and rental codes; (5) El Camino had not provided any evidence showing that permitting ten unrelated persons to reside at the Property was necessary or related to any disabilities the residents may have;[5] and (6) the "ongoing failure by [El Camino] to manage the Property [had] resulted in a substantial administrative burden to the City." *Id.* at 599–600. As a result, the City demanded that El Camino cease operating the Property as a rental dwelling by August 5, 2023. ECF No. 27-1 at 25.

Undeterred by the City's denials of the First and Second Applications, the revocation of its rental license, and the various citations for violating City Code, El Camino continued to operate the Property as a sober home. *Id.* at 25–26; ECF No. 35 at 6. On August 8, 2023, three days after El Camino was supposed to have ceased rental operations at the Property, the City learned that there were still more than three unrelated individuals residing at the Property. A representative of El Camino also indicated El Camino had no intention of complying with City Code. ECF No. 27-1 at 26. Between August 9 and

---

[5] Notably, El Camino never requested an accommodation to house fewer than ten individuals.

November 29, 2023, the City issued six additional citations for violations of City Code, which El Camino neither disputed nor paid. *Id.*; *see* ECF No. 35 at 2.

On August 14, 2023, the City initiated an action against El Camino in Minnesota state court to enforce the City Code as to the Property. *City of South St. Paul v. El Camino, LLC*, No. 19HA-CV-23-3377 (the "Enforcement Action"), Index #1 at 3–13 (Minn. Dist. Ct. Aug. 14, 2023).[6] El Camino initiated this suit about six weeks later, *see* ECF No. 1, and the cases proceeded in parallel. On February 2, 2024, the Minnesota court presiding over the Enforcement Action entered a temporary injunction prohibiting El Camino from operating the Property as a rental dwelling or a "congregate residence" without a valid rental license and ordered El Camino to comply with the temporary injunction within thirty days.[7] Enforcement Action, Index #53 at 7 (Minn. Dist. Ct. Feb. 2, 2024). El Camino subsequently directed the remaining tenants to vacate the Property. ECF No. 27-1 at 80.

---

[6] The City filed as an exhibit the complaint found at Index #1 in the docket for the Enforcement Action. *See* ECF No. 27-1 at 68–78. The Court may take judicial notice of public records from judicial proceedings. *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005).

[7] In opposing the City's motion for a temporary injunction, El Camino asked the Minnesota state court to stay the Enforcement Action pending resolution of this case on the basis that this Court could "provid[e] a comprehensive solution to the general conflict" by determining "whether the City made a reasonable accommodation[] under the FHA." Enforcement Action, Index #49 at 4 (Minn. Dist. Ct. Jan. 15, 2024). It is not clear to the Court, nor could counsel for El Camino explain at oral argument, why El Camino did not raise its FHA and ADA claims as counterclaims in the Enforcement Action rather than raise them in a later, separate action in this Court. Regardless, the Minnesota state court rejected El Camino's arguments and declined to stay those proceedings. *See* Enforcement Action, Index #53 at 5 (Minn. Dist. Ct. Feb. 2, 2024).

On or around February 26, 2024, El Camino submitted a renewed rental license application for the Property. ECF No. 27-1 at 12–15. The City did not consider the renewed rental application because El Camino did not provide a hazard-free inspection report or pay the requisite application fee. *See id.* at 9–11, 16–19, 26. Having failed to obtain a valid rental license, El Camino abandoned its efforts to operate a sober home at the Property and listed the Property for sale on March 20, 2024. *Id.* at 26, 80, 86–91. El Camino sold the Property about two months later for $445,000, *id.* at 33—$9,000 more than the amount El Camino paid for the Property, *see id.* at 25. The Minnesota court ultimately granted summary judgment in favor of the City in the Enforcement Action and made the February 2024 temporary injunction permanent. Enforcement Action, Index #70 at 10 (Minn. Dist. Ct. June 28, 2024).[8]

Here, El Camino alleges that the City's refusal to grant El Camino the accommodation it requested constitutes discrimination on the basis of disability in violation of the FHA and the ADA. ECF No. 1 ¶¶ 88–105. El Camino seeks a declaratory judgment that the City illegally discriminated against El Camino and that its use of the Property as a sober home "is consistent with the classification of the premises as a single-family dwelling." *Id.* at 29. El Camino also seeks an injunction prohibiting the City from interfering with El Camino's operation of the Property as a sober home, compensatory

---

[8] The City filed as an exhibit the order and judgment found at Index #70 in the docket for the Enforcement Action. *See* ECF No. 27-1 at 22–32.

damages, and its reasonable attorneys' fees and costs. *Id.* The City now moves for summary judgment. ECF No. 24.

## ANALYSIS

The City advances three arguments in support of its motion for summary judgment. First, the City asserts that El Camino's claims are moot because the relief El Camino seeks under the FHA and ADA is no longer available now that El Camino has sold the Property. ECF No. 26 at 12–13. Second, the City argues that to the extent El Camino's claims are not moot, they amount to a collateral attack on the Minnesota state court's decision in the Enforcement Action, which is not permitted under the *Rooker-Feldman* doctrine. *Id.* at 13–17. Finally, the City contends that even if mootness and *Rooker-Feldman* do not preclude El Camino's claims, El Camino cannot establish a prima facie case of disability discrimination under the FHA and the ADA. *Id.* at 17–23.

In response, El Camino argues that even if its claims for injunctive and declaratory relief are moot, its claim for compensatory damages is not. ECF No. 35 at 7–8. El Camino further argues that the *Rooker-Feldman* doctrine is inapplicable because the "state court was not asked and did not rule on [El Camino's] right to a reasonable accommodation under the ADA or FHA for the Property." *Id.* at 8–10. El Camino urges the Court to reach the merits of its claims and contends that summary judgment is inappropriate because there are genuine disputes of material fact as to the necessity of its requested accommodation. *Id.* at 10–16.

Having carefully considered the parties' arguments and the record in this case, the Court holds that El Camino's claims are moot.

12

I.      **Legal Standard**

Summary judgment is appropriate where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). A party asserting that a fact is, or is not, genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 54(c)(1). The nonmoving party may not defeat a meritorious summary-judgment motion with mere allegations or denials, but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (citation omitted). Courts considering motions for summary judgment "must not weigh evidence or make credibility determinations." *Sanimax USA, LLC v. City of South St. Paul*, 95 F.4th 551, 558 (8th Cir. 2024) (internal quotation marks omitted) (citation omitted). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586 (citation omitted).

## II. Mootness

The City contends that the typical remedy for a failure-to-accommodate claim is to grant the requested accommodation. ECF No. 26 at 12 (citing *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018)). Because El Camino no longer owns the Property, the City argues, such relief is no longer possible, which renders El Camino's claims moot. *Id.* at 12–13. The City's argument implicates the court's subject-matter jurisdiction and must be resolved before proceeding to the merits of El Camino's claims. *Miss. River Revival, Inc. v. City of Minneapolis*, 145 F. Supp. 2d 1062, 1063 (D. Minn. 2001) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)) ("Standing and mootness are jurisdictional issues that must be addressed prior to consideration of the merits.").

Under Article III, federal courts are empowered to hear only "Cases" and "Controversies." U.S. Const. art. III, §§ 1–2. "To establish Article III standing, a plaintiff must have suffered an injury in fact that is fairly traceable to the defendant's challenged action, and it must be likely that the injury will be redressed by a favorable judicial decision." *Cross v. Fox*, 23 F.4th 797, 800 (8th Cir. 2022) (citation omitted). To show an injury in fact, the plaintiff must have "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted) (citation omitted). "Plaintiffs, as the parties invoking federal court jurisdiction, bear the burden of establishing these elements." *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024). And because "standing is not dispensed in gross," a plaintiff must establish

14

standing for each claim it advances and for each form of relief it seeks. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Significantly, "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27. Thus, even if a plaintiff has suffered an "injury in law" because of the defendant's violation of federal law, and the federal law in question creates a private right of action to vindicate that violation, the plaintiff still must show it was "concretely harmed" by the violation to establish standing to sue in federal court. *Id.* at 427.

Further, a plaintiff must maintain its "personal interest" in the case "at all stages of litigation." *Id.* "'When the issues presented are no longer live or the parties lack a cognizable interest in the outcome,' a case or controversy under Article III no longer exists because the litigation has become moot." *Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Accordingly, if a case has become moot because of changed circumstances that render effective relief impossible, a federal court "lack[s] jurisdiction and must dismiss the action." *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1371 (8th Cir. 2022); *see also Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1138 n.3 (8th Cir. 2023).

### A.   Declaratory and Injunctive Relief

El Camino concedes that its "prospective requests for declaratory and injunctive relief may be moot." ECF No. 35 at 8. The Court agrees.

El Camino seeks a declaratory judgment that the City's denial of El Camino's accommodation request was unlawful and that its use of the Property as a sober home was consistent with the City's residential zoning code, and an injunction prohibiting the City from interfering with El Camino's operation of the Property as a sober home. But it is undisputed that El Camino no longer owns the Property, so none of the declaratory or injunctive relief El Camino requests would redress the alleged past injuries underlying those claims for relief. *See Hunter v. Page County*, 102 F.4th 853, 864 (8th Cir. 2024) ("Even when parties seek a declaratory judgment . . . the federal courts do not decide disputes about generalized past grievances or hypothetical future harms."); *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) ("An injunction is inherently prospective and cannot redress past injuries."). And there is no indication that El Camino will imminently reacquire the Property, so there is no reasonable likelihood that those alleged past injuries will recur. *See Frost*, 920 F.3d at 1162 (citation omitted) ("[W]here the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, [the plaintiff] must show [it] is suffering an ongoing injury or faces an immediate threat of injury.").

Accordingly, El Camino's claims for declaratory and injunctive relief are moot. *See Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999) (holding requests for declaratory and prospective injunctive relief for FHA discrimination claim were rendered moot when the plaintiff voluntarily vacated the property at issue).

16

### B.     Compensatory Damages

El Camino nevertheless contends that "its request for damages is not" moot. ECF No. 35 at 8. El Camino asserts that it "was damaged financially due to the time and effort required to fight [the City] for a reasonable accommodation" and that "[h]ad the City granted the request, that time and money could have been spent working to address any issues [the City] may have had with the Property." ECF No. 35 at 7–8. El Camino further contends that in selling the Property, El Camino "had to forgo any future revenue from the Property" and "potentially lost any value increase if [it] sold the [P]roperty in the future." *Id.* at 8. El Camino also notes that it requested an award of attorneys' fees. *Id.* at 7.

It is well established that "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693 (8th Cir. 2017) (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017)). But there is nothing in the record that shows El Camino suffered any non-speculative monetary injury caused by the City that is sufficient to confer standing.

Beginning with the claim for potential lost profits from a hypothetical future sale of the Property, it is undisputed that El Camino profited from the sale of the Property. *See* ECF No. 23-1 at 25 (purchase price of $436,000); *id.* at 33 (sale price of $445,000). The suggestion that El Camino necessarily would have reaped a greater profit from a future sale of the Property is plainly speculative and lacks evidentiary support in the record—a point which counsel for El Camino appropriately conceded at oral argument. Such speculative claims of injury are insufficient to confer standing or to escape summary judgment. *See Spokeo*, 578 U.S. at 339; *Carter*, 956 F.3d at 1059.

17

El Camino's request for past damages fares no better. El Camino claims that had it not been required to expend "time and money" fighting the City for its requested accommodation, it could have used those resources to address the issues the City identified. ECF No. 35 at 7–8. But El Camino does not cite, nor has the Court identified, any evidence in the record of any concrete monetary harm El Camino suffered as a result of the City's conduct. For example, in response to an interrogatory asking El Camino to "[i]temize in detail all monies expended or owed" by El Camino "as a result of [its] alleged injuries," El Camino offered only an approximate calculation of the attorneys' fees it had incurred. ECF No. 27-1 at 65. And it is undisputed that El Camino operated the Property precisely as it intended, maintaining an average of ten to twelve residents at the Property from October 2022 when El Camino purchased the Property until it ceased operations in March 2024. *See* ECF No. 27-1 at 39, 44–45. Of note, El Camino was never authorized to have more than three unrelated people living at the Property at any point during its ownership of the Property. In short, the only conclusion to be drawn from the evidence in the record is that El Camino realized the financial benefits of its requested accommodation, even though it never actually received that accommodation. El Camino again rests merely on speculative allegations—without any evidentiary support—that it suffered monetary harm. That is fatal to El Camino's case. *See Carter*, 956 F.3d at 1059.

Given the undisputed facts in the record, El Camino has not demonstrated that it was injured in fact by the City in a manner sufficient to maintain standing to pursue compensatory relief. *See TransUnion*, 594 U.S. at 426–27, 431.

### C. Attorneys' Fees

El Camino's only remaining request for relief is for an award of attorneys' fees, *see* ECF No. 35 at 7, but that cannot suffice to establish standing on its own. Attorneys' fees are available to prevailing parties under the FHA and ADA. *See* 42 U.S.C. § 3613(c)(2) (FHA); 42 U.S.C. § 12205 (ADA). But "[a]n interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 905 n.4 (8th Cir. 2016) (quoting *Steel Co.*, 523 U.S. at 107). As discussed above, El Camino has not demonstrated that it has standing to pursue its claims under the FHA and the ADA. Consequently, El Camino also lacks standing to pursue an award of attorneys' fees. *Id.*

### CONCLUSION

In sum, the Court holds that El Camino's claims for declaratory and prospective injunctive relief are moot, that El Camino has not otherwise demonstrated it suffered a concrete injury in fact caused by the City's conduct, and that El Camino's request for attorneys' fees is insufficient on its own to confer standing. Given this holding, the Court need not address the City's other grounds for summary judgment: its jurisdictional argument under the *Rooker-Feldman* doctrine or its argument on the merits that El Camino cannot establish a prima facie case of disability discrimination under the FHA and the

19

ADA.[9]  As a result, the City's motion for summary judgment is granted, and this case is dismissed with prejudice.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1. The City's Motion for Summary Judgment (ECF No. 24) is **GRANTED**; and

2. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 6, 2025                                *s/Laura M. Provinzino*
                                                                    Laura M. Provinzino
                                                                    United States District Judge

---

[9]  Because the Court finds that El Camino lacks standing, it does not address the City's remaining arguments.  Nonetheless, the Court notes that at oral argument, it raised the issue of whether res judicata would bar El Camino's claims.  Specifically, the Court inquired as to whether El Camino's FHA and ADA claims should have been raised as compulsory counterclaims in the Enforcement Action, which would preclude El Camino from raising them here in light of the final judgment on the merits entered there.  *See Thornes v. City of Waldorf*, No. 13-cv-546 (JRT/LIB), 2014 WL 4829136, at *7–10 (D. Minn. Sept. 29, 2014) (holding plaintiff's claims were barred by res judicata because they were compulsory counterclaims under Minnesota law that were not raised in prior litigation between the parties involving the same factual circumstances); *see also Emerald Pointe, LLC v. Taney County*, 78 F.4th 428, 432–33 (8th Cir. 2023) (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)) ("A court may dismiss a case based on *res judicata sua sponte* because such a 'result is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.'").  The City pleaded "estoppel" as an affirmative defense, ECF No. 6 at 10, but in its motion for summary judgment, it raised the somewhat related, but substantively distinct, *Rooker-Feldman* doctrine, *see* ECF No. 26 at 13–17.  However, the Court did not request additional briefing specifically addressing res judicata and thus does not opine as to whether that doctrine applies here.